## PEDESTRIAN INJURED BY OBSTRUCTION ON SIDEWALK.

Superior Court of Cincinnati.

MARY RUCKER v. CITY OF CINCINNATI.

Decided, December, 1913.

*Municipal Corporations—Not Liable for Obstruction on Sidewalk or Slippery Condition, When—Only Ordinary Care Required.*

1.  A municipal corporation is not liable for an injury caused by a fall upon a sidewalk rendered slippery by a deposit of mud and rock which were washed down upon it from an adjacent hillside during a heavy rain, where it appears that there was no opportunity after the cessation of the rain to remove the deposit.

2.  The municipality is not required to go outside the line of the street and sidewalk, upon private property, and construct retaining walls or other devices for the purpose of preventing mud and rock from washing down upon the sidewalk. Its duty is to exercise reasonable care to keep the street and walk free from obstructions, which duty is performed when it is reasonably diligent in removing the obstruction after it comes into existence. And this is true even though a similar condition arises after each heavy rainfall.

*Edward M. Ballard,* for plaintiff.
*John W. Weinig,* Assistant City Solicitor, contra.

OPPENHEIMER, J.

Heard on motion to instruct verdict for defendant.

At the close of plaintiff's testimony, defendant made a motion to instruct a verdict in its favor. The testimony thus far presented tends to show the following facts:

On the night of May 16, 1912, at about 10:30 o'clock, plaintiff was injured by falling upon the sidewalk in front of the premises now known as 2540 West Sixth street. At this point Sixth street runs in a general easterly and westerly direction. On the north side of the street is a cement sidewalk about four feet in width. This walk lies practically at the foot of Price Hill, so that immediately adjoining the walk on the north is

a rather steep slope about four feet in height, from the top of which the ground slopes gradually upward for a short distance to the foot of the long precipitous side of the hill. At the time of the mishap houses had been built on the north side of the street to the east and west of the place where plaintiff fell. In front of each of these houses, and immediately adjoining the sidewalk, were retaining walls erected by the property owners. But there was no such wall where the house numbered 2540 now stands, and probably there was no such wall for a distance of 150 or 200 feet at that point.

Whenever a heavy rain fell, sand, gravel, mud and silt were washed down from this slope onto the sidewalk at those places where there was no retaining wall, and a force of men from the street cleaning department would be sent shortly afterward to remove this deposit and clean up the walk. There does not seem to have been any such deposit at those points where retaining walls had been built.

On the evening when the mishap occurred rain started to fall quite early. It then ceased for a while, but later on it began again and rained very heavily while plaintiff and her two daughters were attending a motion-picture exhibit some distance away. When they left the play-house, however, the rain had stopped falling and it had cleared up. Plaintiff then determined to walk to her home, which was at 2787 West Sixth street. While passing by the place heretofore described, she stepped upon a rock which, it appears, was washed down from the hill, and she was thrown heavily to the sidewalk, breaking her left wrist in several places. The injury was quite serious and its effects will undoubtedly be permanent.

There is no evidence tending to show that plaintiff had ever previously passed the place where she was injured, or that she knew of the condition of the sidewalk which usually followed heavy rains. There is no evidence, to the best of our recollection, which bears upon the conditions as to light or darkness at the place of the mishap. We are therefore justified in assuming that plaintiff did not observe the deposit upon the walk until she came into actual contact with it, and that she

was herself guilty of no negligence. The sole question raised by this motion to direct a verdict for defendant is whether the city could be deemed negligent in what it did or omitted to do.

Section 5714 of the General Code gives to the municipal council the care, supervision and control of sidewalks and provides further, that council "shall cause them to be kept open, in repair and free from nuisance." It is to be remembered that the municipality is not required in the first instance to construct sidewalks, however desirable they may be. The failure to construct them can be construed only as a failure to exercise a public or governmental duty. But having once constructed a sidewalk and invited public travel upon it, a ministerial duty to keep it "open, in repair and free from nuisance" devolves upon a municipality; and for a failure to perform this duty a right of action enures in favor of any one who has suffered injury thereby. It is not contended that the sidewalk in the case at bar was not of itself in good repair. Indeed, it is admitted that it was in good condition; but it is contended that the superimposed dirt rendered it unsafe and defective, and that for this unsafe and defective condition, which was the proximate cause of plaintiff's injury, defendant is liable.

Now the duty which devolves upon a municipality is to keep the sidewalk open and free from nuisances or obstructions. But this duty is not absolute, and the mere presence of an obstruction will not render the city liable for an injury caused thereby. The city is not an insurer against the presence of all obstructions upon its sidewalks; but its liability is for negligence and for negligence only. The expression employed in the statute, that council shall cause the streets to be "kept open and free from nuisance" or obstruction, does not, in our opinion, mean that it must at all hazards keep any obstruction from coming upon the sidewalk, but only that it shall exercise reasonable care to remove any obstruction which may come thereon. The duty to exercise such care arises when the obstruction appears. What is reasonable care must of course depend upon the peculiar circumstances of each case. But the municipality must have had notice, actual or constructive, of the defect or obstruction and a reasonable time in which to remedy it.

In the case at bar it is admitted that defendant had not a reasonable opportunity to remove the deposit from the walk; but plaintiff's counsel contends that as the dangerous condition was known to exist after each heavy rainfall, the city was bound to anticipate its existence and to provide against its recurrence by the erection of a retaining wall adjacent to the sidewalk or by the construction of some other device to carry off or prevent the accumulation of the deposit.

We can not follow plaintiff's counsel to this extremity. The duty for a negligent breach of which the municipality may be held in damages extended only to the streets and sidewalks. If these are maintained in a reasonably safe condition for use in the ordinary modes, the municipality will ordinarily have performed its whole duty. It can not be compelled to go outside the line of the traveled way and condemn private property and erect retaining walls or other structures thereon for the purpose of preventing obstructions from coming upon walks or rain water and dirt from washing over them. To require it to do so would be to impose upon a municipality a burden which it could never have been expected to assume, and to require it to provide against the existence of any dangerous condition which might possibly be anticipated.

Plaintiff's counsel cites and relies upon the case of *City of Toledo* v. *Center,* 16 C. C., 308, which in his opinion establishes the principle that the municipality is liable in damages for injury when, in the exercise of ordinary care, it should have been aware of the continued existence of conditions which were likely to cause a recurrence of a previous defect. In that case, however, plaintiff was injured by a fall upon a sidewalk which was actually defective. Some years before, the foundation of the walk had been washed out by the overflow from a catch basin. The walk had been repaired, but the conditions which caused the wash-out were permitted to continue, with the result that a second wash-out occurred some time before the mishap complained of. The court properly held that the jury was justified in presuming from the evidence that the city should have had notice of the second defect and should, in the exercise of

ordinary care, have repaired it. The case at bar is quite different.

We have arrived at our conclusion in this case with much reluctance. Plaintiff's injury, as has been said, undoubtedly is permanent and she has been practically incapacitated from earning a livelihood. Doubtless the community could stand the loss which has been suffered better than herself. But we have a duty to perform which can not be influenced by those feelings of sympathy which come over judges in common with other human beings. We might prefer to cast the unpleasant burden upon the jury and thus relieve ourselves of the responsibility which devolves upon us. But we confess that we do not know what we might say to the jury, if plaintiff's counsel is correct, except that defendant was negligent in failing to erect a retaining wall to the north of the sidewalk where the plaintiff fell—and this we do not believe to be the law.

Defendant's motion will therefore be granted.